IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

JOYCE CHEEKS,

                              Plaintiff,

v.                                                   Action No. 3:09–CV–171

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,

                              Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Joyce Cheeks' objections to Judge Dohnal's Report and Recommendation ("R&R") affirming the Social Security Administration's denial of an application for Social Security Disability and Supplemental Security Income payments (Doc. No. 14). The Commissioner of the Social Security Administration's (Michael Astrue) decision to deny benefits was based on a finding by an Administrative Law Judge ("ALJ") who determined that Cheeks was not disabled according to the Social Security Act prior to September 11, 2008. For the reasons stated below, the Court will OVERRULE Cheeks' objections and ADOPT Judge Dohnal's Report and Recommendation (Doc. No. 13) DENYING Cheeks' Motions for Summary Judgment (Doc. No. 9) and to Remand (Doc. No. 10), GRANTING the Commissioner of Social Security's Motion for Summary Judgment (Doc. No. 12), and AFFIRMING the Commissioner's decision denying benefits to Cheeks.

## I. BACKGROUND

There is a five-step analysis conducted for the Commissioner by an ALJ to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520. The ALJ considers whether an

1

applicant (1) is performing "substantial gainful activity"; (2) is severely impaired; (3) has an impairment that is at least as severe as one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1; (4) could continue performing work that he did in the past; and (5) could perform any other job in the national economy. 20 C.F.R. §§ 416.905, 416.920; see Rogers v. Barnhart, 216 F. App'x 345, 347–48 (4th Cir. 2007). If, at any step of that analysis, the ALJ is able to determine that the applicant is disabled, the inquiry must stop. 20 C.F.R. § 404.1520(a)(4). The applicant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner if the analysis reaches step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In this case, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged onset of her disability. At steps two and three, the ALJ found that prior to September 11, 2008, Plaintiff had the severe impairment of a traumatic brain syndrome secondary to carbon monoxide poisoning. As of this date, but not before, the ALJ also found that Plaintiff had a severe depressive disorder. However, he concluded that these impairments did not meet any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. The ALJ next determined that prior to September 11, 2008, Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, yet from a nonexertional standpoint she was limited to simple, unskilled work entailing only limited public interaction. (R. at 14-18.) The ALJ also determined that beginning on or about September 11, 2008, Plaintiff would have been unable to interact appropriately with coworkers or the public, would have been likely to decompensate under the stress of competitive work activity, and that her significant problems with concentration and memory would have precluded her from performing work at any exertional level on a regular and consistent basis.

At step four of the analysis, the ALJ determined that Plaintiff could not perform her past relevant work as a census recruiter, telephone counselor, or temporary clerical worker because of her being limited to simple, unskilled work. At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found that prior to September 11, 2008, Plaintiff was not disabled, was employable, and was not entitled to benefits. However, beginning on September 11, 2008, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were not a significant number of jobs in the national economy that Plaintiff could perform. Subsequently, the ALJ found that Plaintiff became disabled on September 11, 2008, and had continued to be disabled through his decision.

Cheeks sought judicial review of the ALJ's decision, arguing that (1) the ALJ's finding of the onset date of disability was wholly arbitrary; (2) the ALJ cannot rely conclusively upon the medical vocational guidelines where the claimant suffers from exclusively nonexertional impairments; and (3) Plaintiff's claims were prejudiced by an improper and misleading initial determination. See R&R at 7. Judge Dohnal found that the ALJ's determination that Plaintiff became disabled on September 11, 2008, but not before that date, was supported by substantial evidence, and affirmed the ALJ's decision.

Plaintiff now objects to Judge Dohnal's R&R, and again alleges that the ALJ's disability onset date was arbitrary and ambiguous. Plaintiff argues that (1) the Magistrate Judge's factual inquiry did not have sufficient medical support for Cheeks' mental condition prior to September 11, 2008; (2) Cheeks' eligibility for benefits should not rest entirely on when the Consultative Examination ("CE") was scheduled; (3) Medical Expert ("ME") testimony was required because she experienced carbon monoxide poisoning; and (4) the ALJ could have re-contacted the CE doctor,

3

Therese May, Ph.D., for additional information as to how long her mental limitations could reasonably have existed. (Pl.'s Obj. to R&R at 1-2.)

The R&R agrees with the Commissioner's determination and recommends that the Court DENY Cheeks' Motion for Summary Judgment, GRANT the Commissioner's Motion for Summary Judgment, and AFFIRM the decision denying benefits to Plaintiff for disability prior to September 11, 2008.

## II. STANDARD OF REVIEW

The Court may review a denial of benefits by the Commissioner, 42 U.S.C. § 405(g), but it must accept the Commissioner's findings of fact if they are supported by substantial evidence and were reached by applying the correct legal standard. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (stating that a court must apply that standard to findings of fact by an ALJ). The "substantial evidence" standard is more demanding than the "scintilla" standard, but less demanding than the "preponderance" standard. Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001). Thus, a finding is supported by "substantial evidence" if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). And, if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. Id. In determining whether a decision satisfies that standard, the Court may not weigh conflicting evidence, evaluate the credibility of evidence, or substitute its judgment for the Commissioner's findings. Mastro, 270 F.3d at 176.

## III. ANALYSIS

A. Judge Dohnal Properly Concluded that Plaintiff was not Disabled as Defined by the Social Security Act ("the Act") Prior to September 11, 2008.

In her objections, Plaintiff contends that the ALJ's finding of the September 11, 2008, onset date of disability was wholly arbitrary. Plaintiff argues that there was no medical support for that conclusion. (Pl.'s Mem. at 4.) Social Security Regulation ("SSR") 83-20 provides that the onset date must have a legitimate basis, and if it must be inferred, SSR 83-20 states that the ALJ should enlist the services and opinion of a medical advisor. While Plaintiff is correct that Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995) requires medical support for a ALJ's determination of onset of mental impairment where the onset date is ambiguous, SSR 83-20 does not expressly mandate that an ALJ is required to consult a medical advisor in every case where the onset of the disability is inferred. Id. at 79. In Bailey, the Fourth Circuit concluded that the record was ambiguous because there was not evidence establishing the progression of the plaintiff's condition prior to the first medical consultation. Id. In contrast, here the ALJ relied on evidence in the record documenting the progression of Plaintiff's condition.

The ALJ considered the medical evidence of record, including Plaintiff's alleged stroke in March, 2001, and her diagnosed limitation of hypertension. In 2002, Plaintiff had a normal EEG, head CT, and MRI of the brain, and her neurological examination was within normal limits. (Administrative record ("R.") at 207-08.) In 2006, she underwent a head CT and MRI, both of which were negative except for a neck mass which was "apparently no cause for concern." (R. at 225-27.) The ALJ found that, according to the medical evidence proffered, Plaintiff did not have a medically determinable stroke in 2001, and found that her hypertension imposed no more than a minimal effect on her ability to function, making it non-severe. The ALJ also considered Plaintiff's testimony at the July 3, 2008 hearing regarding various physical complaints, but it concluded that the record revealed "no medically determinable physical (or other mental) impairments." (R. at 13.) With regards to Plaintiff's alleged depression, the ALJ also considered opinion evidence, including

5

testimony from Dr. Jerome Smith in 2001 and from William O'Neal, a physician's assistant, in May 2007.

In accordance with the Regulations (20 C.F.R.§§ 404.1527 and 416.927) and SSR 96-2p, the ALJ concluded that neither opinion was supported by sufficient, medically acceptable objective findings, and that both opinions were otherwise "inconsistent with substantial other evidence of record." (R. at 17.) O'Neal also examined Plaintiff in May 2008, at which time he assessed depression, but found "no suicidal ideation." (R. at 264.) With no other significant findings accompanying O'Neal's conclusions, the ALJ concluded that Plaintiff's depression did not impose more than mild limitations on her activities of daily living, social functioning, or concentration, persistence, and pace prior to September 11, 2008, and therefore her depression was "not severe" prior to that date. (R. at 13, 18-19.)

In reaching this conclusion, the ALJ also considered Plaintiff's own statement about her daily activities, social functioning, work history, and restrictions on her concentration, persistence, and pace, finding that Plaintiff's depression did not impose more than a minimal effect on her ability to function prior to September 11, 2008. (R. At 16-19.) The ALJ found that prior to September 1, 2008, Plaintiff did have mental limitations related to her traumatic brain syndrome, including problems with attention and concentration, and that these impairments would have made public interaction difficult. These impairments thereby restricted her to simple, unskilled work with limited ability to interact with the public. (R. at 18.) Additionally, the ALJ found Plaintiff's testimony at the hearing about the symptoms she alleged in visits to her treating physicians to be somewhat inconsistent. (R. at 16.) The ALJ found that in October, 2007, although Plaintiff complained of memory loss, difficulty sleeping, and depression, the results of a Mini-Mental Status Evaluation ("MMSE") were normal. (R. at 271.)

The ALJ concluded that the medical evidence regarding the time prior to September 11, 2008 was "overwhelmingly negative." (R. at 17.) As Judge Dohnal noted in his R&R, the ALJ properly considered all of the evidence in the record before determining Plaintiff's disability onset date. The ALJ's reliance on the scheduled date of Plaintiff's CE and the rarity of her carbon monoxide poisoning do not alter the conclusion that there was substantial evidence on the record documenting Plaintiff's disability onset date. Also, the ALJ would only need to re-contact a medical source, like Dr. May, for additional information if the information received was "inadequate for [the ALJ] to determine whether [a plaintiff is] disabled . . ." 20 C.F.R. SS 404.1512, 416.912. For the reasons stated, that clearly was not the case here, as there was a substantial amount of information received and considered by the ALJ.

The medical record relied upon by the ALJ shows substantial support for determining September 11, 2008 as the onset of disability date. Plaintiff underwent a consultative psychological examination on September 11, 2008, performed by Dr. May, who diagnosed Plaintiff with major depression, as well as a cognitive disorder. Dr. May noted that Plaintiff's impairments were associated with marked limitations on social functioning and moderate to marked limitations on concentration, persistence, and pace. The ALJ subsequently found that as of September 11, 2008, Plaintiff's mental condition had significantly worsened and that her depression had become severe. (R. at 13-14.) The ALJ found Plaintiff's allegations about her symptoms and limitations as of that date were generally credible and supported by medical evidence. (R. at 18.) Plaintiff's objections as to the arbitrary nature of the onset date, therefore, are overruled.

B.  Judge Dohnal Correctly Upheld the Commissioner's Reliance on the Medical-Vocational Guidelines to Determine that Plaintiff was not Disabled Before September 11, 2008.

Plaintiff also contends that the ALJ should have elicited vocational expert ("VE") testimony, rather than rely on Medical-Vocational Guidelines ("Grids"), in making his determination that she

7

could perform a significant number of jobs in the national economy prior to September 11, 2008. She relies on McLain v. Schweiker, 715 F.2d 866 (4th Cir. 1983), which held that the presence of a VE was particularly appropriate in cases like McLain, which involved a nonexertional disability. Id. at 870. However, the Fourth Circuit recognized that not every non-exertional limitation rises to the level of a non-exertional impairment precluding reliance on the Grids. See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989). The proper inquiry "is whether the nonexertional condition affects an individual's RFC to perform work of which he is exertionally capable." Walker, 889 F.2d at 49 (citing Grant v. Schweiker, 699 F.2d 189 (4th Cir. 1983)).

Here, the ALJ found that Plaintiff had the following nonexertional limitations related to her traumatic brain syndrome: (1) she was limited to simple, unskilled work not requiring the ability to understand, remember, and carry out more than simple job instructions; and (2) she had a limited ability to interact with the public prior to September 11, 2008. (R. at 18.) The ALJ relied on substantial evidence in drawing these conclusions, and subsequently determining that Plaintiff's nonexertional conditions did not affect her ability to perform work of which she was exertionally capable, namely the unskilled work contemplated by the grids, prior to September 11, 2008. Unskilled work is that "which needs little or no judgment to do simple duties that can be learned on the job or in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). Its basic mental demands include the abilities to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. SSR 85-15.

Unskilled jobs also "generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis." SSR 85-15. Based on the evidence on the record, the ALJ

determined that Plaintiff's nonexertional limitations prior to September 11, 2008 did not prevent her from performing the unskilled work contemplated by the grids because her nonexertional limits were not severe, and no VE testimony was necessary.

With regard to Plaintiff's other non-exertional limitation, a limited ability to interact with the public, the ALJ determined that this too did not affect her ability to perform unskilled work because unskilled jobs ordinarily involve dealing primarily with objects, rather than with data or people. See SSR 85-15. The ALJ found that Plaintiff's retained ability to interact appropriately with supervisors and coworkers also did not affect her ability to perform unskilled work, supporting his decision not to consult with a VE. The ALJ determined, based on the proper legal standard, and based on substantial evidence as listed above, that the Plaintiff did not have a substantial loss of ability to meet the mental demands of unskilled work, and that therefore, no VE testimony was necessary.

### III. CONCLUSION

Because the Court finds that the ALJ applied the correct legal standards and came to a conclusion supported by substantial evidence, Cheeks' objections are OVERRULED and the Magistrate Judge's Report and Recommendation (Doc. No. 13) is ADOPTED as the ruling of this Court. Thus, Cheeks' Motions for Summary Judgment and Remand (Doc. Nos. 9 & 10) are DENIED, the Commissioner of Social Security's Motion for Summary Judgment (Doc. No. 12) is GRANTED, and the Commissioner's decision denying benefits to Cheeks is AFFIRMED.

Let the Clerk send a copy of this Memorandum Opinion to all parties of record.

An appropriate Order shall issue.

                                                /s/
                                     James R. Spencer
                                     Chief United States District Judge

Entered this  30th   day of June 2010